UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER CHASE HARPER, a minor, by and through his parents, RON and CHERYL HARPER, | Civil No. 04CV1103 JAH(POR) |
| Plaintiff, | **ORDER DISMISSING TYLER CHASE HARPER AS A PLAINTIFF; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. # 81]; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 89]** |
| v. | |
| POWAY UNIFIED SCHOOL DISTRICT; et al., | |
| Defendants. | |

## **INTRODUCTION**

Pending before this Court are the parties' cross-motions for summary judgment. The motions have been fully briefed by the parties and oral argument has been entertained. In addition, defendants have raised a suggestion of mootness concerning plaintiff Tyler Chase Harper's claims, which the parties have now fully briefed. After a careful consideration of the pleadings and relevant exhibits submitted, the oral argument presented at the hearing, and for the reasons set forth below, this Court DISMISSES Tyler Chase Harper as a plaintiff; DENIES plaintiff's motion for summary judgment and GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment.

//

//

//

## BACKGROUND[1]

On June 2, 2004, plaintiff Tyler Chase Harper, a minor, by and through his parents, Ron and Cheryl Harper, filed a complaint seeking declaratory and injunctive relief, as well as nominal and punitive damages, based on allegations that defendants violated plaintiff Tyler Chase Harper's constitutional rights when he was detained at school for wearing a t-shirt bearing the words "Homosexuality is shameful. Romans 1:27" on the front and "Be ashamed. Our school has embraced what God has condemned" on the back. On November 4, 2004, this Court granted in part and denied in part defendants' motion to dismiss the complaint, dismissing some of plaintiff's claims, and denied plaintiff's motion for preliminary injunction. *See* Harper v. Poway Unified School District ("Harper I"), 345 F.Supp.2d 1096 (S.D.Cal. 2004); Doc. # 37. Plaintiffs subsequently appealed this Court's denial of plaintiff's motion for preliminary injunction to the Ninth Circuit Court of Appeals.

An amended complaint was filed on November 17, 2004, adding Kelsie Harper, Tyler Chase Harper's sister, as a plaintiff and reasserting other claims previously dismissed. *See* Doc. # 38. This Court, on February 23, 2005, granted in part and denied in part defendants' motion to dismiss plaintiff's amended complaint, dismissing, *inter alia*, Kelsie K. Harper as a plaintiff based on lack of standing. *See* Doc. # 59 at 7-8. This Court subsequently granted leave to file a second amended complaint, which was filed on November 4, 2005, asserting the same claims presented in the first amended complaint and again adding Kelsie K. Harper as a plaintiff. *See* Doc. # 77.

Plaintiffs' second amended complaint alleges defendants' violated plaintiffs' rights: (1) to free speech under the First Amendment to the United States Constitution (first cause of action); (2) to free exercise of religion under the First Amendment (second cause of action); (3) under the Equal Protection Clause of the Fourteenth Amendment (third cause of action); (4) to due process of law under the Fourteenth Amendment (fourth cause of action); (5) under the

---

[1] This Court, in a prior order, set forth a detailed factual history as presented by the parties in their briefs. *See* Doc. # 37. Those undisputed facts are not reiterated here but are incorporated by reference as if fully set forth. In addition, the Ninth Circuit, in its affirmation of this Court's denial of plaintiffs' preliminary injunction motion, presented a thorough recitation of the facts based on the record before it. *See* Harper v. Poway Unified School District, 445 F.3d 1166, 1171-73 (9th Cir. 2006).

04cv1103

1  Establishment Clause of the First Amendment (fifth cause of action); (6) under California Civil

2  Code § 52.1 (sixth cause of action); (7) to free speech under California Education Code §

3  48950 (seventh cause of action); and (8) to free expression under California Education Code

4  § 48907 (eighth cause of action).  Defendants filed an answer to the second amended complaint

5  on December 28, 2005.

6        On February 1, 2006, plaintiffs filed a motion for summary judgment.  The parties then

7  stipulated to extend the date set for hearing plaintiffs' motion in order to allow defendants the

8  opportunity to file a cross motion for summary judgment.  Defendants' motion was filed on

9  April 6, 2006.   Prior to the filing of the parties' opposition briefs to the cross motions, the

10 Ninth Circuit, on April 20, 2006, affirmed this Court's order denying plaintiffs' motion for

11 preliminary injunction.  *See* Harper v. Poway Unified School District ("Harper II"), 445 F.3d

12 1166 (9th Cir. 2006).   The parties' respective oppositions to the cross motions were

13 subsequently filed on April 25, 2006, and their reply briefs were filed on May 4, 2006.  This

14 Court entertained oral argument on May 26, 2006.  Thereafter, the motions were taken under

15 submission.

16        On July 20, 2006, defendants requested that the parties be given the opportunity to file

17 additional briefing on the parties' cross-motions, suggesting that plaintiff Tyler Chase Harper's

18 claims may now be moot due to his recent graduation from Poway High School.  *See* Doc.

19 # 122.   This Court, on July 25, 2006, granted defendants' request.  Defendants filed their

20 supplemental brief on August 21, 2006 and plaintiffs filed their response on August 22, 2006.[2]

21 //

22 //

23 //

24 //

25

26        [2] On November 1, 2006, plaintiffs filed a notice indicating plaintiffs had filed, on October 26, 2006, a
   petition for writ of certiorari before the United States Supreme Court seeking review of the Ninth Circuit's
27 affirmation of this Court's denial of plaintiffs' motion for preliminary injunction, among other things.  *See* Doc.
   # 137.  Absent the issuance of a stay of the Ninth Circuit's mandate, the filing of a petition for writ of
28 certiorari does not divest this Court of jurisdiction to proceed with resolution of the issues remaining in this
   case.  United States v. Sears, 411 F.3d 1240, 1241-42 (9th Cir. 2005).

# **DISCUSSION**

## 1.    **Mootness**

Defendants have suggested that plaintiff Tyler Chase Harper's claims for injunctive and declaratory relief are now moot because he is no longer a student within the Poway Unified School District. *See* Defts' Suppl. Br. at 2. Article III of the United States Constitution requires that there be a "live case or controversy at the time a federal court decides a case." O'Neil v. City of Seattle, 66 F.3d 1064, 1066 (9th Cir. 1995). Specifically, the Ninth Circuit recognizes that "the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Id. The Ninth Circuit characterized the constitutional doctrine of mootness as "the doctrine of standing set in a time frame." Zegarra-Gomez v. I.N.S., 314 F.3d 1124, 1126 (9th Cir. 2003). In order to avoid dismissal on the ground of mootness, a party must continue to have a personal stake in the outcome of the lawsuit and there must be a justiciable live case or controversy between the parties. Id. "It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy." Cole v. Oroville Union High School Dist., 228 F.3d 1092, 1098 (9th Cir. 2000)(citing Doe v. Madison School Dist. No. 321, 177 F.3d 789 (9th Cir. 1999)(en banc)). Plaintiffs concede that plaintiff Tyler Chase Harper's claims for injunctive and declaratory relief are now moot but point out that his damages claims remain unaffected by his graduation from high school. In addition, plaintiffs point out that plaintiff Kelsie Harper's claims for injunctive and declaratory relief are still viable. Pltffs' Add. Br. at 1. This Court agrees with plaintiffs' assessment. Accordingly, this Court finds plaintiff Tyler Chase Harper's claims for injunctive and declaratory relief are now moot.

This Court notes that it previously dismissed plaintiff Tyler Chase Harper's damages claims against all defendants in their official capacities on Eleventh Amendment immunity grounds and against the individual defendants in their personal capacities on qualified immunity grounds. *See* Harper I, 345 F.Supp.2d at 1115-1119. That ruling was not disturbed by the Ninth Circuit. *See* Harper II. 445 F.3d at 1192. Although plaintiffs "respectfully

1   disagree" with this Court's qualified immunity ruling,[3] plaintiffs indicate the inclusion of

2   plaintiff Tyler Chase Harper's damages claims in the second amended complaint was done to

3   avoid waiving the claims on appeal.  Pltffs' Add. Br. at 1-2.  This Court reaffirms its prior

4   dismissal of plaintiff Tyler Chase Harper's damages claims.  Accordingly, because plaintiff Tyler

5   Chase Harper's damages claims have been dismissed and his injunctive and declaratory relief

6   claims are moot, all of plaintiff Tyler Chase Harper's claims are no longer viable.  Therefore,

7   Tyler Chase Harper is DISMISSED as a plaintiff in this case.  The remainder of this Order

8   addresses only plaintiff Kelsie Harper's claims for relief.

9   **2.     The Parties' Cross Motions for Summary Judgment**

10          **a.     Legal Standard**

11          Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on

12  factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive

13  determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986).

14  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and

15  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

16  any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

17  Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  Anderson v. Liberty

18  Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

19  The materiality of a fact is thus determined by the substantive law governing the claim or

20  defense.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary

21  judgment.  T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626,

22  630 (9th Cir. 1987)(citing Anderson, 477 U.S. at 248).  When ruling on a summary judgment

23  motion, the Court must examine all the evidence in the light most favorable to the non-moving

24  party.  Celotex, 477 U.S. at 325.  The Court cannot engage in credibility determinations,

25

26          [3] Defendants present, in their supplemental briefing on mootness, further argument concerning the
    applicability of qualified immunity to plaintiff's fourth cause of action, apparently in case this Court
27  determines it is appropriate to revisit the issue at this time.  See Defts' Suppl. at 4-6.  Plaintiffs object to the
    presentation of this argument for the first time in a supplemental brief concerning mootness.  See Pltffs' Add.
28  Br. at 2.  This Court agrees with plaintiffs and, accordingly, declines to address defendants' additional qualified
    immunity argument.

weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the jury.  Anderson, 477 U.S. at 255.

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  This burden may be satisfied either by (1) presenting evidence to negate an essential element of the non-moving party's case; or (2) showing that the non-moving party has failed to sufficiently establish an essential element to the non-moving party's case.  Id. at 322-23.  Where the party moving for summary judgment does not bear the burden of proof at trial, the party may show that no genuine issue of material fact exists if "there is an absence of evidence to support the non-moving party's case."  Id. at 325.  "The Celotex 'showing' can be made by pointing out through argument[] the absence of evidence to support the plaintiff's claims."  Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc)(citation omitted).  The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim.  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

However, where the moving party bears the burden of proof at trial, the moving party must present compelling evidence in order to obtain summary judgment in its favor.  United States v. One Residential Property at 8110 E. Mohave, 229 F.Supp.2d 1046, 1047 (S.D.Cal. 2002)(citing Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998)("The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive."); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986)("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986)(same)).  Failure to meet this burden results in denial of the motion and the Court need not consider the non-moving party's evidence.  Id. at 1048.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. The non-moving party does not meet this burden by showing "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The United States Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." <u>Anderson</u>, 477 U.S. at 252. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." <u>Id</u>. at 256. Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See* <u>Schneider v. TRW, Inc.</u>, 938 F.2d 986, 990-91 (9th Cir. 1991). Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at 250. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. <u>Celotex</u>, 477 U.S. at 325.

Cross-motions for summary judgment do not necessarily permit the judge to render judgment in favor of one side of the other. <u>Starsky v. Williams</u>, 512 F.2d 109, 112 (9th Cir. 1975). The Court must consider each motion separately "on its own merits" to determine whether any genuine issue of material fact exists. <u>Fair Housing Council of Riverside County, Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001); <u>Starsky</u>, 512 F.2d at 112. When evaluating cross-motions for summary judgment, the court must analyze whether the record demonstrates the existence of genuine issues of material fact, both in cases where both parties assert that no material factual issues exist, as well as where the parties dispute the facts. *See* <u>Fair Housing Council of Riverside County</u>, 249 F.3d at 1136 (citing <u>Chevron USA, Inc. v. Cayetano</u>, 224 F.3d 1030, 1037 & n. 5 (9th Cir. 2000)).

//
//
//
//

04cv1103

**b.    Analysis**

Plaintiff Kelsie Harper (hereinafter "plaintiff") moves for summary judgment in her favor on her claims based on violations of (1) the right to free speech (first cause of action); (2) the right to free exercise of religion (second cause of action); (3) the right to equal protection under the law (third cause of action); and (4) the right conferred under the Establishment Clause (fifth cause of action). Defendants move for summary judgment in their favor on all of plaintiff's causes of action.

**1.    The Ninth Circuit's Ruling**

The Ninth Circuit's affirmation of this Court's order denying plaintiff's motion for preliminary injunction, filed after the parties' cross motions were filed, addressed some of the issues sought by the parties to be adjudicated by this Court on summary judgment. Specifically, the Ninth Circuit addressed plaintiff's First Amendment claims based on free speech, free exercise of religion and the Establishment Clause. *See* Harper II, 445 F.3d at 1191-92. The Ninth Circuit's ruling on these issues now become law of the case and, thus, are binding on this Court on remand. Jeffries v. Wood, 114 F.3d 1484, 1489 (9th Cir. 1997)(en banc).

The Ninth Circuit found no likelihood of success on the merits of plaintiff's First Amendment free speech claim on the grounds that plaintiff Tyler Chase Harper's wearing of his t-shirt "'collli[des] with the rights of other students' in the most fundamental way,'" explaining that:

> [p]ublic school students who may be injured by verbal assaults on the basis of a core identifying characteristic such as race, religion, or sexual orientation, have a right to be free from such attacks while on school campuses. As Tinker clearly states, students have the right to 'be secure and to be let alone.' Being secure involves not only freedom from physical assaults but from psychological attacks that cause young people to question their self-worth and their rightful place in society. The 'right be let alone' has been recognized by the Supreme Court, of course, as 'the most comprehensive of rights and the right most valued by civilized men.'

Harper II, 445 F.3d at 1178 (quoting Tinker v. Des Moines Indep. School Dist., 393 U.S. 503, 508 (1969)(additional citations omitted)). The court noted, however, that it "expresses no view" on whether its decision would be the same at a trial on the merits because the standard on appellate review of a denial of preliminary injunction "is not necessarily the same." Id.

04cv1103

at 1181 n.24.  The court also found that "a school has the right to teach civic responsibility and tolerance as part of its basic educational mission; it need not as a quid pro quo permit hateful and injurious speech that runs counter to that mission." Id. at 1186.

The court found no likelihood of success on the merits of plaintiff's free exercise of religion claim because "[t]he prohibition against the wearing of a T-shirt in school [expressing religious views] does not constitute a substantial burden on the exercise of religion." Id. at 1188.  The court determined that it "need not decide whether [plaintiff's] free exercise claim is properly deemed a 'hybrid' claim" but, nevertheless, held that defendants' actions satisfied strict scrutiny analysis under Sherbert v. Werner, 374 U.S. 398, 402-03 (1963). Id.  The court explained that:

> [b]ecause there is no evidence that the School's restriction on Harper's wearing of his T-shirt substantially burdened a religious practice or belief, and because the School has a compelling interest in providing a proper educational environment for its students and because its actions were narrowly tailored to achieve that end, it would appear the district court did not abuse its discretion in finding that Harper failed to demonstrate a likelihood of success on the merits as to his free exercise of religion claim.

Id. at 1189 (footnote omitted).

In addition, after reviewing plaintiff's allegations of a violation of her right to free exercise of religion based on statements made by a deputy sheriff and a school official[4] to Tyler Chase Harper while he was detained at school, the court found "[t]he record ... does not support Harper's claim that the School violated his free exercise right by 'attempting to change' his religious views," noting that "[t]here is no evidence here that the school officials' comments were associated with a religious, as opposed to a secular, purpose" and that "[t]heir affidavits demonstrate that the School acted in order to maintain a secure and healthy learning environment for all its students, not to advance religion." Id. at 1190.

The Ninth Circuit also found the District's actions did not violate the Establishment Clause, noting that plaintiff's Establishment Clause claim "appears to be simply a restatement of his free exercise claim," and explaining that:

---

[4] These allegations concern statements made to plaintiff Tyler Chase Harper by Detective Sheriff Norman Hubbert and Assistant Vice Principal Giles.  See Sec.Am.Compl. ¶¶ 52, 56-58; Harper II, 445 F.3d at 1172-73.

1        there is no evidence that the School's actions were based on anything other than
2   an entirely secular and legitimate aim of protecting the rights of students and
    promoting a tolerant and safe learning environment.  There is certainly no
3   evidence (or even allegation) that school authorities sought to coerce or encourage
    Harper to participate in some other religion or to adopt some state-supported or
    other religious faith.

4

5   <u>Id</u>. at 1191.

6        The Ninth Circuit did not address this Court's dismissal of plaintiff's due process claim

7   because the court found it "need not consider the validity of the School's dress code in order

8   to rule on preliminary injunction." <u>Id</u>. at 1191-92.  The court also did not review plaintiff's

9   equal protection claim (although it found the claim to be "simply a restatement of [plaintiff's]

10  viewpoint discrimination claim which ... we have rejected,") because "[w]hether or not there

11  may be other aspects to the claim we do not know with certainty at this point in the

12  proceedings." <u>Id</u>. at 1192.  The court, lastly, noted that it "need not 'decide the [qualified

13  immunity] issue in order to review the claims properly raised on interlocutory appeal'" because

14  the dismissal of plaintiff's damages claim based on a finding of qualified immunity is not

15  "inextricably intertwined" with the denial of the preliminary injunction motion.  <u>Id</u>. (citations

16  omitted).

17       The parties agree that this Court is not foreclosed by the Ninth Circuit's ruling to

18  adjudicate: (1) plaintiff's facial challenges to the policy of the Poway Unified School District

19  ("the District"); and (2) plaintiff's state law claims contained in her sixth, seventh and eighth

20  causes of action.  *See* Pltff's Opp. at 1 (the Ninth Circuit opinion "is not controlling on either

21  the [p]laintiffs' facial challenge or their state law claims."); Defts' Reply at 1 ("the only rulings

22  remaining for this Court to decide are the state law claims, and the challenge to the District's

23  policies.").  In her reply brief, plaintiff, however, also contends that the Ninth Circuit's ruling

24  did not foreclose a ruling on plaintiff's First Amendment free speech claim.  *See* Pltff's Reply at

25  3-6.

26  //

27  //

28  //

10                                                                                    04cv1103

## 2. Plaintiff's Facial Challenges

The Poway Unified School District Board, in 1997, promulgated Board Policy, Article 5.0, Section 5.28.1, which defines hate behavior as follows:

> In order to foster a supportive environment for a diverse student body, the Poway Unified School District provides guidelines to assist schools in the reduction and/or prevention of hate behavior.

> For the purpose of these guidelines the operational definition of hate behavior is as follows:

> A hate behavior is any act or attempted act to cause physical injury, emotional suffering, or property damage through intimidation, harassment, racial/ethnic slurs and bigoted epithets, vandalism, force or the threat of force, motivated all or in part by hostility to the victim's real or perceived gender, race, ethnicity, religion, sexual orientation, or mental or physical challenges ...

Sec. Am.Compl. ¶ 75. In order to implement this policy, Poway High School published various handbooks containing additional definitions and examples of hate behavior. *See, e.g.,* Chandler Decl. in Opp., Exh. 1 at 19.

Plaintiff, in her motion, seeks summary judgment in her favor on her First Amendment free speech claim contained in the first cause of action, contending the District's policies, taken together as a whole, are overbroad such that the policies are unconstitutional on their face.[5] Defendants do not move for summary judgment on plaintiff's facial challenge contained in her free speech claim, focusing only on plaintiff's vagueness challenge contained in the fourth cause of action.[6]

//

//

---

[5] Although plaintiff further moves, in her motion as well as in subsequently filed pleadings, for summary judgment on an as-applied overbreadth challenge, this Court addresses only plaintiff's facial challenge because the policies at issue in the case have not yet been applied to plaintiff Kelsie Harper. Therefore, insofar as plaintiff moves for summary judgment on an as-applied overbreadth challenge to the policies, her motion is DENIED.

[6] Defendants, in their reply brief, contend plaintiff's facial challenges are procedurally deficient, in that plaintiff focuses on material that is not District policy but, instead, "are documents addressed to school administrators to help them define procedures, determine steps to take, and to define the training to implement the policies." *See* Defts' Reply at 1. Neither party addressed this argument at the hearing. This Court notes that defendants do not move for summary judgment on this basis and fail to present any evidence to support this contention. Accordingly, this Court declines to address the argument.

04cv1103

## A.    Overbreadth

A regulation on speech is constitutionally overbroad if it sweeps within its ambit a substantial amount of protected speech along with speech it may legitimately regulate. Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973).  Plaintiff contends that the District's policies are facially overbroad because they "target[] substantially more speech than is needed to prevent disruption of the educational environment."  Pltff's Mot. at 14-15.  Plaintiff points out that the District's policies define harassment as "'unwanted and unwelcome behavior from other students or staff members that interferes with another individual's life,'" id. at 15,[7] but "list[] examples of prohibited 'harassment'" as "'[n]egative comments or behavior on race, ethnicity, sexual orientation, religion, or gender.'" Id. (citing Chandler Decl. in Supp. of Pltff's Mot., Exh. 1).  Plaintiff argues the District's definition of harassment, coupled with the examples listed, encompasses all speech concerning the named subjects as long as the speech is deemed negative by the District and, thus, the policies are impermissibly overbroad.  Id.

In her motion, plaintiff cites to a Third Circuit case in which a similar policy was struck down as unconstitutionally overbroad.  See id.  (citing Saxe v. State College Area School Dist., 240 F.3d 200, 215 (3d Cir. 2001)(striking down a policy prohibiting "any unwelcome verbal, written or physical conduct which offends, denigrates or belittles an individual" based on "race, religion, national origin, gender, sexual orientation, disability, or other personal characteristics.")).  In opposition to defendants' motion, plaintiff explains that the policy in the instant case is actually broader than the policy struck down in Saxe because the policy here applies off school grounds while the Saxe policy did not.  Pltff's Opp. at 4.  Defendants, in reply, contend that the regulation of student behavior off campus does not create an overbroad policy because "the policies are tailored directly to the scope of supervision that school employees are required to give under the California Education Code."  Defts' Reply at 2 (citing Cal.Educ.Code § 44807 (requiring that "[e]very teacher in the public schools shall hold pupils

---

[7] Although plaintiff cites to an exhibit attached to the declaration of Timothy D. Chandler submitted in support of plaintiff's motion, that exhibit, entitled "Policies & Procedures for Parents Concerning Harassment of Students," does not contain the cited quotation.  See Chandler Decl. in Supp. of Pltff's Mot., Exh. 1.  Instead, the quotation cited is found in a student handbook published on Poway High School's website.  See Chandler Decl. in Supp. of Pltff's Opp., Exh. 1.

to a strict account for their conduct on the way to and from school, on the playground, or during recess."). This Court agrees with defendants. The policy's regulation of speech off school grounds is not impermissibly overbroad because California's statutes require such regulation, the validity of which are not challenged in this case. *See* Cal.Educ. Code § 44807. Therefore, plaintiff's argument fails.

Plaintiff further argues that the policy in this case is even broader than the policy in <u>Saxe</u> because it incorporates "'the victim's belief' in determining whether hate behavior has occurred" while the policy in <u>Saxe</u> did not. Pltff's Opp. at 4 (citing <u>Harper II</u>, 445 F.3d at 1205-06 (Kocinski, J., dissenting)). Although defendants appear to agree Section 5.28.1 requires a determination of the victim's belief in order to define hate behavior, *see* Defts' Reply at 3, this Court is unconvinced that policy provision should be so construed. Section 5.28.1 defines hate behavior as acts that are "motivated all or in part by hostility to the victim's real or perceived ... sexual orientation ..." Sec.Am.Compl. ¶ 75. This provision does not, in this Court view, require a determination of what the victim believes was the actor's motivation but, instead, requires a determination of what the actor believes (or perceives) about the sexual orientation of the victim. Thus, the portion of the District's policy referred to by plaintiff does not support her contention and her argument fails for that reason.

Defendants also argue that the <u>Saxe</u> case cited by plaintiff is distinguishable from the instant case because the District's policy here "does not seek to proscribe discourse on 'values'" as did the policy at issue in <u>Saxe</u>. Defts' Reply at 2 (quoting <u>Saxe</u>, 240 F.2d at 210 (the policy at bar is "attempting to proscribe negative comments about 'values.'"). This Court again agrees with defendants. This Court finds that the policy referred to by plaintiff in this case is directed at negative speech concerning specific protected classes and not just negative comments on values as was the policy in <u>Saxe</u>. *See* Chandler Decl. in Supp. of Pltffs' Opp., Exh 1; <u>Saxe</u>, 240 F.2d at 210. This Court, thus, finds the policy at issue here is not analogous to, nor broader than, the policy struck down in <u>Saxe</u>.

This Court finds that plaintiff, the moving party with the burden of proof at trial, has failed to meet her initial burden on summary judgment of presenting compelling evidence to

04cv1103

1  demonstrate the Board Policy, read together with the handbooks and other informational

2  material published by the District, is overbroad on its face. *See* One Residential Property at

3  8110 E. Mohave, 229 F.Supp.2d at 1047; Fontenot, 780 F.2d at 1194; Calderone, 799 F.2d

4  at 259. Thus, this Court need not proceed further in its analysis of this issue. One Residential

5  Property at 8110 E. Mohave, 229 F.Supp.2d at 1048. This Court, therefore, finds plaintiff is

6  not entitled to judgment as a matter of law on this issue. Accordingly, plaintiff's motion for

7  summary judgment on overbreadth grounds is DENIED.

8  ### B.    Vagueness

9      Defendants, in their motion, seek summary judgment in their favor on plaintiff's

10 vagueness challenge contained in the fourth cause of action on the grounds that the Court

11 previously decided the vagueness issue when it dismissed Tyler Chase Harper's due process

12 claim with prejudice. *See* Defts' Mot. at 18. This Court, in dismissing the due process claim,

13 explained that a policy may be found void for vagueness if a reasonable person of ordinary

14 intelligence could not understand what conduct is prohibited. *See* Harper I, 345 F.Supp.2d at

15 1112 (citing Broadrick v. Oklahoma, 413 U.S. 601, 608 (1973)). This Court found that:

16     The policies here clearly prohibit T-shirts bearing messages that are 'derogatory
       connotations directed toward sexual identity.' Compl. ¶ 69, Exh. B. The phrase
17     'Homosexuality is shameful' is clearly derogatory toward sexual identity. Based
       solely on the policies detailed in the instant complaint, this Court finds that a
18     reasonable student would know that the message on plaintiff's T-shirt was
       prohibited. Thus, this Court finds the School's policies are not vague or 'lack
19     sufficient objective standards to curtail the discretion of school officials.' Id.
       ¶ 104. Therefore, plaintiff's due process challenge fails as a matter of law.

20

21 Id. This Court thus found the District's policies were not vague either on their face or as

22 applied to Tyler Chase Harper.

23     The law of the case doctrine precludes a court from reconsidering an issue previously

24 decided by the same court, or a higher court, in the same case. Moore v. Jas. H. Matthews &

25 Co., 682 F.2d 830, 833 (9th Cir. 1982). The doctrine applies to a court's explicit holdings and

26 those decided by necessary implication. Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993).

27 This Court explicitly found that the District's policies are not vague on their face or as applied

28 to Tyler Chase Harper. *See* Harper I, 345 F.Supp.2d at 1112. Because Tyler Chase Harper's

claims have now been dismissed as moot, defendants' motion for summary judgment on this claim is also moot as it relates to Tyler Chase Harper. Accordingly, defendants' motion for summary judgment on the fourth cause of action as it relates to plaintiff Tyler Chase Harper is DENIED as moot.

This Court notes that, even though the due process claim originally presented by Tyler Chase Harper was previously dismissed with prejudice, plaintiffs reasserted the claim, ostensibly to preserve any future appeal rights but plaintiff Kelsie Harper was not a party at the time this Court issued its prior ruling. Thus, although plaintiff Tyler Chase Harper was precluded from reasserting the previously dismissed due process claim, Kelsie Harper is not. Therefore, as it relates to Kelsie Harper, defendants' motion is still viable.

This Court's prior finding that the policies are not facially vague is binding as law of the case as to plaintiff Kelsie Harper's due process claim. Defendants point out that the policies have not changed since the Court's order and, thus, "the logic of the Court's ruling should still stand." Defts' Mot. at 18. Plaintiff, in opposition, contends new evidence has surfaced that provides this Court with a sufficient reason to depart from its previous ruling on the District's policies' vagueness. *See* Pltff's Opp. at 8. This Court may depart from its previous finding if (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exists; or (5) a manifest injustice would otherwise result. United States v. Alexander, 106 F.3d 874 (9th Cir. 1997).

Plaintiff points, in support of her contention, to the fact that the District permitted Tyler Chase Harper, one year after the incident giving rise to this lawsuit occurred, to give a "fire and brimstone" speech concerning "anti-homosexuality," in which such conduct was labeled "sinful," "dangerous," and "destructive." Pltff's Opp. at 8. Plaintiff contends this clearly negative speech was found not negative by the District and, thus, not in violation of the District's policies. Id. at 10. Plaintiff claims this stance is inconsistent with the District's determination that the statement "Homosexuality is shameful" displayed on Tyler Chase Harper's t-shirt was negative and in violation of the District's policies. Id. Plaintiff contends

1    "[t]his is not a rational distinction," rendering a person of ordinary intelligence unable to

2    determine what is prohibited and what is not. Id. Plaintiff argues that, based on this new

3    evidence, this Court may revisit its prior determination that the policies at issue are not vague.

4         This Court disagrees with plaintiff. The evidence of the later speech does not aid

5    plaintiff Kelsie Harper's facial vagueness challenge because it merely creates doubt as to the

6    District's application of its policies to Tyler Chase Harper, who is no longer a plaintiff in this

7    case. Plaintiff Kelsie Harper cannot assert an as-applied vagueness challenge to the District's

8    policies because the policies have not been applied inconsistently to her. Without Tyler Chase

9    Harper as a plaintiff, the vagueness challenge is now limited to a facial attack. This Court finds

10   the evidence of Tyler Chase Harper's later speech is not relevant to a facial vagueness challenge

11   because it relates to how the District applied its policies to Tyler Chase Harper. For this reason,

12   this Court finds the new evidence does not provide a sufficient reason to depart from its prior

13   ruling that the policies are not facially vague. Thus, because this Court has found the policies

14   are not vague and plaintiff has presented no sufficient reason to depart from the finding,

15   plaintiff's vagueness challenge to the policies presented on due process grounds cannot lie.

16   Therefore, defendants are entitled to judgment as a matter of law on plaintiff's vagueness

17   challenge contained in the fourth cause of action. Accordingly, defendants' motion for

18   summary judgment on plaintiff Kelsie Harper's fourth cause of action based on due process is

19   GRANTED.[8]

20              **3.    State Law Claims**

21        The parties also agree that plaintiff's state law claims contained in the sixth, seventh and

22   eighth causes of action survived the Ninth Circuit's recent ruling. *See* Pltff's Opp. at 1.

23   Plaintiff's second amended complaint alleges defendants violated California Civil Code § 52.1

24   and California Education Code §§ 48907 and 48950. *See* Sec.Am.Compl. at 16-18.

25

---

26        [8] Defendants do not seek summary judgment on plaintiff's vagueness challenge presented in the first
     cause of action. *See* Defs' Mot. at 18. Although plaintiff presents arguments in her opposition concerning her
27   vagueness challenge contained in the first cause of action, plaintiff does not move for summary judgment on
     that basis. *See* Pltff's Opp. at 8-10. In that plaintiff does not seek summary judgment on this issue in her
28   moving papers, instead presenting it in her opposing brief, summary judgment on her vagueness challenge
     based on free speech is not available to her.

04cv1103

## A.    Legal Standard

California Civil Code § 52.1 provides for a right of action against any person who "interferes by threats, intimidation, or coercion ... with the exercise or enjoyment by any individual ... of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal.Civ.Code § 52.1(a). The California Education Code gives students "the right to exercise freedom of speech and of the press including, but not limited to ... the wearing of buttons, badges, and other insignia." Cal.Educ.Code § 48907. California Education Code § 48950 prohibits schools from disciplining students for speech that is protected by the First Amendment outside of campus. Cal.Educ.Code § 48950(a). Section 48950, however, neither prohibits discipline for speech that is not protected by the First Amendment nor prohibits a school district from implementing reasonable time, place, and manner restrictions on speech. *See* Cal.Educ.Code § 48950(d) and (f). Thus, unprotected speech and speech that is subject to reasonable time, place, and manner restrictions are exceptions to the California Education Code rules governing students' free speech rights.

In California, harassment is defined as "conduct [having] the purpose or effect of having a negative impact upon the individual's work or academic performance, or of creating an intimidating, hostile, or offensive work or educational environment." Cal.Educ.Code § 212.5(c). A hostile environment is created when a protected class of persons are attacked by speech that is "severe" or "pervasive." 5 Cal.Code Regs. § 4916(a)(3); <u>Murray v. Oceanside Unified School Dist.</u>, 79 Cal.App.4th 1138, 1361 (1999). The California Education Code permits a school to discipline a student for conduct that constitutes sexual harassment. Cal.Educ.Code § 48900.2; Cal.Educ.Code § 48950(d).

//

//

//

//

//

1

## B.    Analysis

2       Defendants move for summary judgment in their favor on plaintiff's state law claims

3 contained in her sixth, seventh and eighth causes of action.[9]  *See* Defts' Mot. at 20-23.

4 Defendants contend that (i) there is no evidence of threats or harassment by the District to

5 support plaintiff's claim under § 52.1; and (ii) plaintiff's claims under §§ 48907 and 48950 fail

6 as a matter of law because (a) no discipline was invoked and (b) the t-shirt's message falls under

7 the harassment exception to the California Education Code.[10]  *See* Defts' Mot. at 20-22; Defts'

8 Opp. at 17-18; Defts' Reply at 4-6.

9

### i.    Section 52.1 (Sixth Cause of Action)

10      Defendants initially argue that there is no evidence of threats or intimidation by school

11 officials to support a claim under § 52.1 and, therefore, summary judgment should be granted

12 in defendants' favor on that claim.  Defts' Mot. at 20-21.  Plaintiff does not address this

13 argument in her opposition to defendants' motion.  Defendants, at the hearing, broached the

14 subject anew, reasserting their initial argument and further contending that plaintiff's actions

15 are more in violation of this statute than defendants' because the t-shirt's message was clearly

16 intimidating to those people offended by it.  Plaintiff again did not address defendants'

17 argument at the hearing, focusing instead on her other claims.

18      This Court finds that defendants have met their initial burden on their motion for

19 summary judgment by "pointing out through argument[] the absence of evidence to support"

20 plaintiff's claim as presented in their sixth claim for relief under § 52.1.   <u>Devereaux</u>, 263 F.3d

21 at 1076.   This Court further finds that plaintiff has failed to meet her burden of rebutting

22 defendants' argument by "set[ting] forth specific facts showing that there is a genuine issue for

23 trial."  <u>Anderson</u>, 477 U.S. at 256.  Therefore, this Court finds that defendants are entitled to

24 judgment as a matter of law on this claim.  Accordingly, defendants' motion for summary

25

26          [9] Although plaintiff presents some discussion concerning the application of state law to the facts of this
27 case, plaintiff does not move for summary judgment on any of her state law claims.

28          [10] Because this Court ultimately finds defendants are entitled to judgment as a matter of law on the
grounds that no discipline was invoked, this Court does not address defendants' arguments concerning the
harassment exception to the California Education Code.

04cv1103

1  judgment on plaintiff's sixth cause of action pursuant to § 52.1 is GRANTED.

2     **ii.**  **Sections 48907 and 48950 (Seventh and Eighth Causes of Action)**

3

4     Defendants, in their motion, contend that plaintiff's state law claims contained in her

5  seventh and eighth causes of action pursuant to §§ 48907 and 48950 fail as a matter of law

6  because there is no evidence plaintiff was disciplined. Defts' Mot. at 22. Defendants point out

7  that plaintiff has not, as yet, attempted to wear the t-shirt at issue or otherwise display a similar

8  message at school. <u>Id</u>. Plaintiff does not dispute that a plaintiff must be disciplined to state a

9  claim under §§ 48907 and 48950. Plaintiff also does not, and cannot, argue that she has been

10  disciplined. Thus, defendants are entitled to judgment as a matter law on plaintiff's seventh

11  and eighth causes of action. Therefore, defendants' motion for summary judgment on

12  plaintiff's seventh and eighth causes of action is GRANTED.

13    **4.**  **Plaintiff's First Amendment Claims**

14     **A.**  **Free Speech**

15     Both parties move for summary judgment on plaintiff's free speech claim under the First

16  Amendment to the United States Constitution contained in her first cause of action. In

17  opposition to plaintiff's motion, defendants seek summary judgment in their favor because the

18  Ninth Circuit ruled plaintiff's speech could be restricted under <u>Tinker</u>, 393 U.S. at 508, which

19  is now law of the case.[11] Defts' Opp. at 6-7; *see* <u>Harper II</u>, 445 F.3d at 1177-81. Thus,

20  defendants contend that plaintiff's free speech claim is no longer viable. <u>Id</u>. Plaintiff, in reply,

21  contends that the Ninth Circuit ruling concerning the application of <u>Tinker</u> "does not compel

22  a particular ruling" on her free speech claim. Pltff's Reply at 3. According to plaintiff, the

23  Ninth Circuit did not foreclose plaintiff's free speech claim under the First Amendment but

24

25     [11] In addition, defendants reassert their contention, presented in their prior motion to dismiss, that the

26  speech could also be restricted as patently offensive under <u>Bethel School Dist. No. 403 v. Fraser</u>, 478 U.S. 675, 682 (1988). Defts' Opp. at 7. Defendants submit, in support of this contention, declarations from two homosexual students stating that they were each offended by the language on plaintiff's t-shirt. <u>Id</u>.; Keane

27  Decl. ¶ 3; Spilman Decl. ¶ 3. However, in response to this Court's inquiry at the hearing as to whether the t-shirt should be considered patently offensive in light of all that has transpired in this case, counsel for

28  defendants answered in the negative. Thus, defendants appear to have abandoned this contention. Therefore, this Court does not address it.

1  merely "identifie[d] a particular type of harm which schools may protect against, even if it

2  means suppressing otherwise protected speech ..." Id. Plaintiff, thus, frames the question on

3  summary judgment as "whether there is any evidence that the Harpers' speech actually

4  interfered with the educational development of any students or was reasonably likely to do so."

5  Id.

6        In support of this contention, plaintiff discounts defendants' submitted declarations,

7  contending the declarations offer nothing to suggest these students' rights were infringed upon

8  because neither student actually saw the t-shirt during school or interacted with Tyler Chase

9  Harper in any way but, instead, merely viewed Tyler Chase Harper's picture in the school

10  newspaper. Id. at 4. Plaintiff further contends these declarations contain no indication these

11  students' educational environment was affected. Id. Plaintiff also claims that Fraser is

12  inapplicable here because Fraser allows censorship of offensive language, not ideas. Id. at 6.

13        Plaintiff's arguments concerning whether it is appropriate to address the First

14  Amendment free speech claim after the Ninth Circuit ruling were presented for the first time

15  in reply and defendants did not further address the issue at the hearing. This Court finds

16  plaintiff's argument fails. The Ninth Circuit explained that, contrary to the dissent's opinion,

17  there need not be evidence of interference with the educational environment in order to find

18  harassing speech harmful. Harper II, 445 F.3d at 1180-81. The Ninth Circuit clearly found

19  that "harassment on the basis of sexual orientation adversely affects the rights of public high

20  school students." Id. at 1181. Thus, plaintiff is foreclosed from re-addressing her First

21  Amendment free speech claim now on this ground. Accordingly, plaintiff's motion for summary

22  judgment on her first cause of action based on free speech is DENIED. Because the Ninth

23  Circuit's ruling foreclosed further adjudication of this issue, defendants are entitled to judgment

24  on this claim as a matter of law. Moore, 682 F.2d at 833; Thomas, 983 F.2d at 154.

25  Therefore, defendants' motion for summary judgment on plaintiff's first cause of action based

26  on free speech is GRANTED.

27  //

28  //

04cv1103

### B.    Free Exercise Claim

Both parties also move for summary judgment on plaintiff's free exercise of religion claim under the First Amendment that is contained in her second cause of action. The Ninth Circuit found, based on the same facts presented here, that defendants' acts did not substantially burden religion and were narrowly tailored to serve a compelling government interest, thus finding plaintiff's free exercise claim fails as a matter of law. <u>Harper II</u>, 445 F.3d at 1189. Defendants contend that this ruling is law of the case and, therefore, plaintiff's motion for summary judgment on this claim must be denied and judgment entered on this claim in favor of defendant. Defts' Opp. at 12-13. Plaintiff does not further address this issue in reply. This Court finds that, because the Ninth Circuit's ruling on this issue is law of the case, defendants are entitled to judgment on this claim as a matter of law. <u>Moore</u>, 682 F.2d at 833; <u>Thomas</u>, 983 F.2d at 154. Therefore, defendants' motion for summary judgment on plaintiff's free exercise claim (second cause of action) is GRANTED and plaintiff's motion for summary judgment on this claim is DENIED.

### C.    Establishment Clause Claim

Plaintiff's fifth cause of action alleges defendants violated the Establishment Clause by implementing policies that require school officials to act with hostility toward certain religious viewpoints and approve one religious message over another. *See* Sec.Am.Compl. ¶¶ 113, 115-16. In support of her motion, plaintiff presents evidence of a website maintained by the District[12] that offers links to two third party websites: <u>www.familyacceptance.com</u> and <u>www.bidstrup.com/parents.htm</u>.[13] Pltff's Mot. at 19 (citing Chandler Decl. in Supp. of Pltff's Mot. ¶¶ 5, 7, 8 & Exh. 2). Plaintiff notes these websites address "gender issues" by explaining that the Bible does not view homosexual behavior as a sin, an opposite view to that held by

---

[12]This website is listed as "the Poway High School Student Center" and can be found at <u>www.powayusd.com/pusdphs/Studentservices/resources_for_parents.htm</u> *See* Chandler Decl. in Supp. of Pltff's Mot. ¶ 5; Chandler Decl. in Supp. of Pltff's Opp. ¶ 3.

[13] In addition, plaintiff argues that the District's attorneys' "attack[] [on plaintiff's] religious convictions" in the briefs filed in this case provide further evidence of hostility toward plaintiff's religious beliefs. Pltff's Mot. at 19-20; *see also* Pltff's Opp. at 24. However, the statements referred to by plaintiff are merely comments made by counsel in pleadings and, thus, are not evidence. Therefore, this Court declines to consider this argument.

04cv1103

1  plaintiff.  Id.  Plaintiff contends the website evidence, in addition to the evidence previously

2  presented in support of the preliminary injunction motion concerning the school's treatment

3  of Tyler Chase Harper,[14] proves the District "believes [plaintiff's] position on homosexuality

4  is theologically flawed" and, therefore, demonstrates hostility toward plaintiff's religious

5  viewpoint, in violation of the Establishment Clause.  Id.  Thus, plaintiff moves for summary

6  judgment on this claim, contending the evidence supports a finding that defendants' policies

7  violate the Establishment Clause.  See id. at 18-20.  Defendants also move for summary

8  judgment in their favor, contending there is insufficient evidence to support the claim.[15]  See

9  Defs' Mot. at 18-20.

10                              **i.    Legal Standard**

11        The Establishment Clause of the United States Constitution provides that "Congress

12  shall make no law respecting an establishment of religion." U.S. Const. amend I.  The Supreme

---

14  [14] The evidence presented on preliminary injunction regarding this claim involved certain statements
made to Tyler Chase Harper by Detective Sheriff Norman Hubbert and Assistant Vice Principal Giles.  See

15  Sec.Am.Compl. ¶¶ 52, 56-58; Harper II, 445 F.3d at 1172-73.  Defendants object to plaintiff's allegations and
evidence concerning Detective Hubbert's statements to Tyler Chase Harper on relevancy and hearsay grounds.

16  See Doc. # 99 ¶ 3.  Because this Court did not consider Detective Hubbert's statements in resolving the issues
presented in these motions, defendants' objections are OVERRULED as moot.  Defendants' remaining

17  evidentiary objections, see id. ¶¶ 1-2, 4-5; Doc. # 112, also concern evidence this Court did not consider in
ruling on the issues presented herein.  Specifically, defendants object to portions of the declarations of Ron

18  Harper and Joel Rhine submitted in support of plaintiff's opposition to defendants' motion to dismiss,
Exhibit 5 attached to the Chandler declaration submitted in support of plaintiff's summary judgment motion, a

19  portion of Tyler Chase Harper's declaration concerning his "suspension" from school, plaintiff's
characterization of the Day of Silence as being school sponsored, and plaintiff's evidence submitted but not

20  filed concurrently with the moving papers. None of the evidence objected to by defendants was considered by
this Court in ruling on the issues presented here.  Accordingly, defendants' remaining evidentiary objections are

21  also OVERRULED as moot.

22        [15] The Ninth Circuit, in its recent ruling, found no Establishment Clause violation based on the record
presented by the parties in support and in opposition to plaintiff's preliminary injunction motion.  See

23  Harper II, 445 F.3d at 1190-91.  In so finding, the Ninth Circuit found that "[i]t is ... clear from the record
that the primary effect of the School's banning of the T-shirt was not to advance or inhibit religion but to

24  protect and preserve the educational environment and the rights of other members of the student body."
Harper II, 445 F.3d at 1191.  Although defendants initially contend, in their opposition to the plaintiff's

25  motion, that the Ninth Circuit's ruling disposed of plaintiff's Establishment Clause claim, see Defs' Opp. at 13,
defendants, without further explanation, proceed to address the issue. See id. at 13-16.  At the hearing,

26  defendants stated they believe the Ninth Circuit's ruling did not completely foreclose this Court from
addressing plaintiff's Establishment Clause claim based on plaintiff's presentation of additional evidence not

27  presented to the Ninth Circuit.  This Court agrees with defendants and finds that the Ninth Circuit's ruling,
which was based solely on the evidence presented on preliminary injunction, does not foreclose this Court's

28  adjudication of the issue on summary judgment.

04cv1103

Court has found the clause applies equally to the condoning of a particular religion or religious belief by the government as well as to governmental disapproval or hostility to religion.  *See* Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993); Vernon v. City of Los Angeles, 27 F.3d 1385, 1396 (9th Cir. 1994).   Thus, government actions that advance religion, as well as those that are hostile to religion, are prohibited under the Establishment Clause.  *See* Lynch v. Donnelly, 463 U.S. 668, 573 (1984).  However,

> 'The First Amendment does not prohibit practices which by any realistic measure create none of the dangers which it is designed to prevent and which do not so directly or substantially involve the state in religious exercises or in the favoring of religion as to have meaningful and practical impact.  It is of course true that great consequences can grow from small beginnings, but the measure of constitutional adjudication is the ability and willingness to distinguish between real threat and mere shadow.'

Lee v. Weisman, 505 U.S. 577, 598 (1992)(quoting School Dist. of Abington v. Schempp, 374 U.S. 203, 308 (1963)).  The Constitution "permits government some latitude in recognizing and accommodating the central role religion plays in our society."  County of Allegheny v. ACLU, 492 U.S. 473, 657 (1989)(Kennedy, J., concurring and dissenting).

In Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971), the Supreme Court set forth a test to determine whether government conduct violates the Establishment Clause.  The Lemon test is most often used in cases where the government is alleged to give preference to one particular religion, but it is also applied in cases involving a hostility to religion theory.  American Family Association, Inc. v. City and County of San Francisco, 277 F.3d 1114, 1121 (9th Cir. 2002)(citing Vernon, 27 F.3d at 1396).  Under Lemon, government conduct will not be found in violation of the Establishment Clause if (1) it has a secular purpose; (2) its principal and primary effect neither advances nor inhibits religion; and (3) it does not foster excessive government entanglement in religion.  Id. at 612-13.   The challenged government practice must survive all three prongs of the Lemon analysis in order to be held constitutional.  Edwards v. Aguillard, 482 U.S. 578, 583 (1987). ("State action violates the Establishment Clause if it

1  fails to satisfy any of these prongs.").[16]

2              **ii.    Analysis**

3            **a.    Secular Purpose**

4        The Ninth Circuit recently analyzed the secular purpose prong in a case involving the

5  enactment of a city resolution banning certain advertisements by a religious group that

6  identified homosexuality as a "sexual sin" and claimed homosexuals were more likely to engage

7  in "self-destructive behavior," such as alcohol and drug abuse, emotional and physical violence,

8  and acquiring sexually transmitted diseases. American Family, 277 F.3d at 1119. In American

9  Family, the Ninth Circuit held that the purported purpose of the government's action,

10  protecting gays and lesbians from violence, was a plausible secular purpose and, thus, meets the

11  minimal requirement needed to pass the test under the first prong of Lemon. Id. at 1121-22.

12  The United States Supreme Court later clarified the purpose prong, holding that the purported

13  secular purpose must be "genuine, not a sham, and not merely secondary to a religious

14  objective." McCreary County Kentucky v. American Civil Liberties Union of Kentucky, 545

15  U.S. 844, 125 S.Ct. 2722, 2735 (2005). The Supreme Court explained that, where the secular

16  purpose is "a predominantly religious one," the government action fails the purpose prong. Id.

17        Defendants contend that the inclusion of the website links on the District's website was

18  for a secular purpose, that is, to aid parents in understanding their students' issues concerning

19  homosexuality. See Defts' Opp. at 14. Plaintiff contends that the evidence of the website links,

20  coupled with the previous actions by school administrator's toward the message on Tyler Chase

21  Harper's t-shirt, demonstrate the District's policies toward homosexuality were implemented

22  for a purely religious purpose. See Pltff's Reply at 9.

---

24  [16]  The parties appear to infer there are other tests besides the test outlined in Lemon to use in determining an Establishment Clause violation. See Defts' Mot. at 18-19 (citing County of Allegheny v. ACLU, 492 U.S. 573, 627 (1989)(the "endorsement test"); Lee v. Weisman, 505 U.S. 577, 587 (the "coercion

25  test"); Pltff's Reply at 7 (citing Van Orden v. Perry, 125 S.Ct. 2854 (2005); McCreary County, Kentucky v. American Civil Liberties Union of Kentucky, 545 U.S. 844, 125 S.Ct. 2722 (2005)). However, in none of

26  these cases did the Supreme Court imply that the Lemon test is no longer the governing test in determining whether an Establishment Clause violation has occurred. See Van Orden, 125 S.Ct. at 2859 (plurality opinion)

27  (not applying the Lemon test because "we think [the Lemon test is] not useful" under the facts of that case); McCreary County, 125 S.Ct. at 2734 (also not applying Lemon because the "scrutinizing purpose [required

28  under Lemon] does not make practical sense" based on the facts of that case). Therefore, insofar as the parties invite this Court to apply a different test than the test outlined in Lemon, this Court declines that invitation.

The website's creator, Laura Kopperud, submitted a declaration attesting to her subjective reasoning for placing the links at issue on the School website. *See* Kopperud Decl. ¶¶ 3-7. Specifically, Kopperud stated that:

> In deciding to create links to these two websites, I looked at a variety of web pages on the subject matter and felt that these two pages had helpful content, including the story of parents and how they dealt with their child's issues, and additional links to other third-party web pages that appeared to me to be helpful. I wanted parents to be able to view information that would help them with their struggle to deal with their students' issues.

Kopperud Decl. ¶ 5. Further, Kopperud stated that:

> I also chose to provide links to the familyacceptance and bidstrup websites in part because they contained Christian content, and I wanted to cater to Christian parents who often spoke with the Student ... services department because they were having difficulty grasping with the issues confronting their students in the context of Christianity. I thought these Christian parents might appreciate the Christian content.

Id. ¶ 6.

Although Kopperud indicated the links were provided partly for their Christian content, *see* id. ¶ 5, it is clear that her primary objective in placing the links on the website was to provide information for parents to use in dealing with their children's (student's) issues associated with the sexual orientation of the student(s). Plaintiff discounts Kopperud's declaration as competent evidence to support defendants' motion for summary judgment because defendants admit the linked websites were specifically chosen due their religious content.[17] Pltff's Reply at 8 (citing Kopperud Decl. ¶¶ 5-6). Thus, plaintiff claims defendants have expressly adopted the religious views of those websites. Id.

This Court finds that the purpose articulated by Kopperud is "genuine, ... and not merely secondary to a religious objective." McCreary County, 125 S.Ct. at 2735. Despite the fact that the links were also placed on the website based on their religious content, this Court finds that the "genuine" purpose for the links placement was not "a predominantly religious one." Id. Therefore, this Court finds the District's policies do not fail the purpose prong of Lemon.

---

[17] Plaintiff does not challenge the factual content of this declaration nor the declarant's credibility. Rather, plaintiff asserts her interpretation of the contents of the declaration supports judgment in her favor.

### b. Principal and Primary Effect

The second prong of the <u>Lemon</u> test requires a determination of whether it would be objectively reasonable to construe the government action as primarily sending a message that it endorses or disapproves of religion. <u>Vernon</u>, 27 F.3d at 1398. The inquiry is conducted from the perspective of a reasonable observer who is "familiar with the government practice at issue." <u>Kreisner v. City of San Diego</u>, 1 F.3d 775, 794 (9th Cir. 1993). "[T]he focus of this prong is on the primary effect of the government's conduct" and a government action will not violate the Establishment Clause if perceived hostility toward a religious group is not the action's primary effect. <u>American Family</u>, 277 F.3d at 1122-23; <i>see also</i> <u>Vernon</u>, 27 F.3d at 1398-99.

In <u>Vernon</u>, the Ninth Circuit found a "suggestion" that the City of Los Angeles disapproved of particular religious beliefs but determined no Establishment Clause violation occurred because the primary purpose of the government action was not to disapprove or endorse religion. <u>Vernon</u>, 27 F.3d at 1398-99. Similarly, in <u>American Family</u>, the Ninth Circuit found there was an inference of government hostility toward a religious viewpoint concerning homosexuality but, nonetheless, determined the government action did not violate the Establishment Clause because the perceived hostility was not the "principal effect" of the government action. <u>American Family</u>, 277 F.3d at 1122. Instead, the Ninth Circuit found the action was "primarily geared toward promoting equality for gays and discouraging violence against them." <u>Id</u>.

The website links at issue in this case, coupled with the actions taken against Tyler Chase Harper's t-shirt message, at best only infer hostility toward plaintiff's religious views on homosexuality. In light of the website creator's stated purpose for including the site links on the District's web page, the disclaimer[18] prominently displayed on the website, along with the

---

[18] The disclaimer reads as follows:

We take reasonable care in linking web sites but have no direct control over the content of the linked sites, or the changes that may occur to the content on those sites. It is the responsibility of the user to make their own decisions about the accuracy, currency, reliability and correctness of information contained in linked external web sites. The material on this web site may include views or recommendations of third parties, which do not necessarily reflect the views of Student Services, or indicate its commitment to any particular course of action. Kopperud

District's stated purpose for implementing its policies concerning gender issues,[19] a reasonable, informed and objective observer would find that the purpose of the District in creating and maintaining its website was primarily geared toward promoting tolerance, fostering a supportive environment for all students and protecting the rights of homosexual students. A reasonable, informed and objective observer would not view the principal and primary effect of defendants' inclusion of the website links at bar as adopting one particular religious viewpoint. Any perceived hostility was not the principal effect of the District's actions. Thus, this Court finds that the District's actions cannot be construed as sending primarily a message of accepting one religious viewpoint over another.

This Court also finds that the interplay between the religious viewpoint contained in the third party web pages and the defendants' association with it would lead a reasonable observer to only one conclusion - that the primary and principal effect of the inclusion of the links was not to advance a particular viewpoint contrary to the dictates of the Establishment Clause. Clearly, the ownership of the message is private but is posted on a web page owned and maintained by the District. It is equally as clear that the portion of the District's website containing the challenged religious viewpoint is part of a larger and dominant secular presentation and purpose which negates any perceived message of endorsement of any religious viewpoint contained therein. A reasonable observer would appreciate that the links to the third party web pages were included in an effort to acknowledge the challenges of sexual orientation among students and their parents and to convey tolerance of different choices with respect to sexual preferences on orientation, as well as to assist students and parents with the emotional and parental support challenges associated therewith, and not to glorify one religious viewpoint over another. Again, the disclaimer further diffuses any misconception of the District's support

Decl. ¶ 8.

[19] Board Policy, Article 5.0, Section 5.28.1, which states the purpose for implementing guidelines for reducing or preventing hate behavior is "to foster a supportive environment for a diverse student body." *See* Sec.Am.Compl. ¶ 75.

04cv1103

or sponsorship of the religious content of the message.[20]  As such, plaintiff has failed to establish that the principal and primary effect of defendants' actions was to be hostile toward her religious viewpoint and/or to approve or endorse one religious message over another.  Therefore, this Court finds that the District's action in this case does not meet the principal and primary effect prong of the <u>Lemon</u> test.

c.     <b>Excessive Entanglement</b>

The third prong of the <u>Lemon</u> test examines whether the government conduct results in "an excessive government entanglement with religion."  <u>Lemon</u>, 403 U.S. at 613.  "[T]he entanglement prong seeks to minimize the interference of religious authorities with secular affairs and secular authorities with religious affairs."  <u>Cammack v. Waihee</u>, 932 F.2d 765, 780 (9th Cir. 1991).  Entanglement can be either "administrative" or "political."  <u>Vernon</u>, 27 F.3d at 1399.  "Administrative entanglement typically involves comprehensive, discriminating, and continuing state surveillance of religion."  <u>Id</u>.  However, "political entanglement, or political divisiveness resulting from government action which divides citizens along political lines" by itself, is not sufficient to constitute excessive entanglement.  <u>Id</u>. at 1401 (citing <u>Lemon</u>, 403 U.S. at 622-23; <u>Lynch</u>, 465 U.S. at 689 ("The entanglement clause is properly limited to institutional entanglement"); <u>Cammack</u>, 932 F.2d at 781; <u>American Family</u>, 277 F.3d at 1123.

Plaintiff contends that the website evidence, coupled with the evidence previously presented, demonstrates that "the District has intentionally entangled itself into a controversy over religious dogma by taking sides on a question of Biblical interpretation."  Pltff's Reply at 9.  In this Court's view, taking sides in the religious debate at issue in this case can only be

---

[20] Defendants cite to various cases in which courts have viewed disclaimers as evidence that the public entity did not endorse one particular religious viewpoint over others.  Defts' Opp. at 14-15 (citing, *inter alia*, <u>Capitol Square Review and Advisory Board v. Pinette</u>, 515 U.S. 753, 782 (1995)(O'Connor, J., concurring in part and concurring in judgment)(disclaimer on Ku Klux Klan cross serves to disentangle government from message); <u>Hills v. Scottsdale Unified School Dist. No. 48</u>, 329 F.3d 1044, 1055 (9th Cir. 2003)(disclaimer in brochure lessened danger of religious endorsement)).  Plaintiff, in reply, discounts defendants' authority, explaining that the cases cited by defendants which involve disclaimers all concern private speakers in a government forum whereas, here, there is no government forum for private speakers as the District admits it is solely responsible for the content of its website.  Pltff's Reply at 8.  This Court agrees with plaintiff and finds the cases cited by defendants are not persuasive on this issue.  However, the simple fact that the District included such a disclaimer is still evidence supporting a finding that defendants did not intend to endorse any religious viewpoint presented by third parties on their websites.

28

1  considered political entanglement because it divides citizens along clear political lines. Nothing

2  in the record before this Court can be inferred as comprehensive, discriminating, or continuing

3  state surveillance of religion. Thus, plaintiff's allegations under the Establishment Clause are

4  insufficient to meet the entanglement prong under Lemon.

5              **iii.    Conclusion**

6       Because plaintiff has failed to establish that the District's actions lack a secular purpose

7  or a primarily secular effect, or create an impermissible entanglement with religion, this Court

8  finds plaintiff cannot, as a matter of law, demonstrate defendants violated the Establishment

9  Clause. Therefore, plaintiff, as the moving party with the burden of proof on this claim, has

10 failed to present compelling evidence to support a grant of summary judgment in her favor.

11 One Residential Property at 8110 E. Mohave, 229 F.Supp.2d at 1047. Based on that failure,

12 this Court need not consider defendants' evidence in order to grant defendants' motion for

13 summary judgment. Id. at 1048. Accordingly, defendants' motion for summary judgment on

14 this claim is GRANTED and plaintiff's motion is DENIED.

15           **5.    Equal Protection Claim**

16      Both parties also move for summary judgment on plaintiff's equal protection claim

17 contained in the third cause of action. *See* Pltff's Mot. at 17-18; Defts' Mot. at 15-17.[21]

18 Plaintiff contends, in her motion, that "the District has opened itself up for expression about

19 homosexual behavior by allowing students and staff to participate in the Day of Silence" but

20 then censored plaintiff Tyler Chase Harper's, as well as other "likeminded" students, from

21 expressing their views on the subject.   Pltff's Mot. at 17.[22]

22      Defendants' actions will survive strict scrutiny if they are narrowly tailored to serve a

23 compelling interest. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). The Ninth Circuit found, in

24

25      [21] Defendants, in their opposition to plaintiff's motion and during oral argument, apparently mistake
this claim for plaintiff's due process claim, contending that it was previously dismissed with prejudice and,
26  thus, should again be dismissed. *See, e.g.*, Defts' Opp. at 16. Therefore, the only arguments presented by
defendants on this claim are those found in defendants' moving papers. In addition, defendants fail to address
27  the claim in their reply brief to their own motion.

28      [22] This Court, in a prior order, found this claim required strict scrutiny review because plaintiff
sufficiently alleged a fundamental right had been invaded. *See* Doc. # 59 at 11.

discussing plaintiff's free exercise claim, that "the School has a compelling interest in providing a proper educational environment and ... [that] its actions were narrowly tailored to achieve that end ..." <u>Harper II</u>, 445 F.3d at 1189. Thus, the Ninth Circuit has conclusively decided that the policies at issue in this case withstand strict scrutiny. The law of the case doctrine precludes this Court from further adjudicating this issue. *See* <u>Moore</u>, 682 F.2d at 833. Therefore, because the Ninth Circuit's ruling is law of the case, defendants are entitled to judgment as a matter of law on plaintiff's equal protection claim.[23] Accordingly, defendants' motion for summary judgment on plaintiff's equal protection claim (third cause of action) is GRANTED and plaintiff's motion is DENIED.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Plaintiff Tyler Chase Harper is **DISMISSED** as a plaintiff;

2.    Plaintiff Kelsie Harper's motion for summary judgment [doc. # 81] is **DENIED** in its entirety;

3.    Defendants' motion for summary judgment [doc. # 89] is **GRANTED IN PART and DENIED IN PART** as follows:

   a.    Defendants' motion for summary judgment on plaintiff Tyler Chase Harper's claims are **DENIED as moot**;

   b.    The remainder of defendants' motion for summary judgment is **GRANTED.**

DATED: January 22, 2007

_____
HON. JOHN A. HOUSTON
United States District Judge

---

[23] Defendants, in addition to their arguments involving whether their actions were narrowly tailored to serve a compelling interest, also argue there is no equal protection violation because no evidence indicating the school promoted the Day of Silence exists. Defts' Mot. at 16. Instead, defendants claim the evidence shows that the school permitted the Day of Silence to occur "much like [it] permitted the Day of Truth to occur in 2005." <u>Id</u>. (emphasis omitted). This Court need not address this contention in light of this Court's finding herein, that is, as a matter of law, plaintiff's claim has been disposed of by the law of the case.

04cv1103